BILAL A. ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO (Cal. Bar No. 265481)
Chief, National Security Division
AMANDA B. ELBOGEN (Cal. Bar No. 332505)
Assistant United States Attorney
National Security Division
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorney
Transnational Organized Crime Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3667/5748/0813
Facsimile: (213) 894-0141
E-mail: ian.yanniello@usdoj.gov
amanda.elbogen@usdoj.gov
daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANTE JAMES ANTHONY-GAFFIELD,<br><br>Defendant. | No. CR 25-1022-MWF-3<br><br><u>PLEA AGREEMENT FOR DEFENDANT DANTE JAMES ANTHONY-GAFFIELD</u> |

1. This constitutes the plea agreement between Dante James Anthony-Gaffield ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

///

///

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count four of the indictment in United States v. Carroll, et al., CR 25-1022-MWF, which charges defendant with providing and attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

THE USAO'S OBLIGATIONS

3. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining count of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed. Defendant further agrees that he may be treated as if he had been convicted of the dismissed charge for purposes of U.S.S.G. § 1B1.2(c), regardless of whether the factual basis below would be sufficient to satisfy all elements of the charge. Defendant waives the right to challenge the sufficiency of the factual basis as to any element of any dismissed charge.

d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

4. Defendant understands that for defendant to be guilty of the crime charged in count four, that is, providing and attempting to provide material support to a terrorist, in violation of Title 18, United States Code, Section 2339A, the following must be true: (1) defendant knowingly provided or attempted to provide material support or resources; and (2) defendant did so knowing or intending the support or resources would be used in preparation for, or in carrying out, an offense identified as a federal crime of terrorism, namely, violations of Title 18, United States Code, Section 844(i) (Malicious

Damage or Destruction and Attempted Damage and Destruction of a Building), and Title 18, United States Code, Section 2332a(a)(2) (Use of a Weapon of Mass Destruction).

5. The term "material support or resources" means any property, tangible or intangible, or service, including lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, and personnel, including one or more individuals including oneself.

PENALTIES

6. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2339A, is: 15 years' imprisonment; a life term of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

9. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

10. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown, but by at least in or around October 2025, and continuing through on or about December 12, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly provided and attempted to provide material support and resources, including personnel, namely himself, knowing and intending that it be used in preparation for, and in carrying out, namely, violations of Title 18, United States Code, Section 844(i) (Malicious Damage or Destruction and Attempted Damage and Destruction of a Building), and Title 18, United States Code, Section 2332a(a)(2) (Use of a Weapon of Mass Destruction).

Specifically, in or around the Summer of 2025, defendant met AUDREY CARROLL ("CARROLL") and ZACHARY PAGE ("PAGE"), who were both members of a group called the "Turtle Island Liberation Front," or TILF. When defendant was first introduced to TILF, defendant believed TILF was an advocacy group that held anti-government, anti-capitalist, and pro-Palestinian ideology. Over time, however, defendant learned that core members of TILF, including CARROLL, who went by the monikers "Black Moon" and "Asiginaak," and PAGE, who went

by the monikers "AK" and "Cthulu's Daughter," advocated for and were actively planning violence against U.S. businesses and individuals working for the federal government. Among other things, certain members of TILF, including CARROLL, PAGE, and Tina LAI ("LAI"), who went by the moniker "kickwhere," took steps to obscure their identities, including using encrypted messaging applications, wearing "bloc" and/or clothing to mask their physical appearance, and using monikers.

In October 2025, for example, defendant met with CARROLL, PAGE, and a co-conspirator at a park located near Union Station in Los Angeles. During the meeting, CARROLL made clear that she believed peaceful protests were ineffective and advocated for the use of violence to counter what CARROLL claimed was violence by the government. During the meeting, PAGE agreed that a violent approach was necessary. Among other things, CARROLL told the group that she had experience building Molotov cocktails, which she stated the group could use to fight back against law enforcement, specifically, officers working for U.S. Immigration and Customs Enforcement ("ICE").

Leading up to the co-conspirators arrest on December 12, 2025, TILF members, including CARROLL and PAGE, continued to discuss plans to commit violence. For example, on November 29, 2025, PAGE sent CARROLL, defendant, and other co-conspirators an encrypted text message that stated, "death to israel death to the usa death to colonizers death to settler-coloniasm [sic]." In response to PAGE's message, CARROLL wrote, "Death to them all, burn it all down [three emojis of a burning heart]". Additionally, on December 1, 2025, CARROLL, using an encrypted messaging application, messaged co-

conspirators, including PAGE and defendant, declaring “I identify as a terrorist” and “I am a Hamas fangirl”. On that same day (December 1), defendant messaged other TILF members, including CARROLL and PAGE, “I am here to destroy Zionism by any means necessary . . . Real Activism = Destroying Zionism By Any Means, even if it’s risky. If you arent [sic] willing to die for or lose your freedom, then you’re just another toy in the machine.”

On or about December 7, 2025, CARROLL, PAGE, defendant, and an individual the conspirators believed was a co-conspirator, but who was, in fact, an undercover law enforcement employee (the “UCE”), met in person in Echo Park, Los Angeles, California. A confidential human source working for the FBI (the “CHS”) was also present during the meeting. During the meeting, CARROLL handed defendant and the UCE a handwritten plan to use explosives to attack multiple locations on New Year’s Eve. Defendant did not read the document closely, but defendant understood it outlined a plan to target U.S. businesses with homemade bombs. CARROLL discussed the bombing plot, including stating that she had researched instructions to build explosive devices. CARROLL also stated that she had acquired some components, had 13 PVC pipes, and that she had bought potassium nitrate via an online commerce website using a burner account that was scheduled to be delivered on December 11, 2025. CARROLL further discussed testing different types of bombs in the desert so the bombs could be used to “completely pulverize” the conspirators’ targets on New Years Eve. After defendant reviewed the bombing plan, CARROLL asked him whether some of his comrades would also participate in the bombing plan. In response, defendant indicated he would ask others if they were willing to participate in the plan.

During the December 7 meeting, CARROLL said, "what we're about to do, that's gonna, uh, be like a Luigi level situation," and that it was time for America to fall and that America falling will make Israel fall. PAGE added: "everything we're doing it, to be as clean as possible because 100,000% the FBI is gonna be like on that shit . . . Yeah, so we all know, what we're gettin' into." PAGE also outlined steps the co-conspirators should take to avoid law enforcement detection, including covering their shoes with socks to cover shoeprints or burning their shoes after the operation.

In addition to the New Year's Eve bombing plot, PAGE and CARROLL also discussed plans for future attacks after the New Year's Eve bombings, namely, plans to commence targeting ICE agents and vehicles with pipe bombs beginning in January or February 2026, with CARROLL noting "that would take some of them out and scare the rest of them."

Following the December 7 meeting, CARROLL added defendant to a group chat within the Signal application called the "Order of the Black Lotus" (hereafter the "Black Lotus Chat") so the co-conspirators could discuss and plan for their bombing attack. The participants in the Black Lotus Chat, including defendant, used monikers: defendant went by "Nomad," and as noted above, CARROLL went by "Black Moon" and "Asiginaak," PAGE went by "AK" and "Cthulu's Daughter," and LAI went by "Kickwhere". Among other things, CARROLL, PAGE, LAI, and defendant used the Black Lotus Chat to prepare for and plan the New Year's Eve bombing plot, including: (1) discussing obtaining materials to make explosives; (2) planning travel to the desert to build and test explosives; and (3) taking steps to avoid law enforcement detention, among others. Based on information that CARROLL provided to defendant and other co-conspirators, defendant

understood that CARROLL had shared the bombing plans with other co-conspirators who were close with CARROLL.

On December 12, 2025, CARROLL, PAGE, defendant, and LAI traveled to the Lucerne Valley in two vehicles for the purpose of building and testing improvised explosive devices ("IEDs"). After the co-conspirators arrived at the desert, they began setting up a campsite, including tents and a table to be used to manufacture the IEDs. CARROLL, PAGE, and LAI all brought bomb-making components to the campsite, including various sizes of PVC pipes and chemicals to make explosive black powder for the IEDs. CARROLL, PAGE, and LAI transferred the bomb-making materials to a table. Defendant and others set up a tent near the table to keep the bomb-making materials and the group shaded from the sun. Shortly thereafter, the FBI arrested defendant and his co-conspirators before they manufactured functional IEDs.

## SENTENCING FACTORS

11. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 24 | U.S.S.G. §§ 2X1.1, 2K1.4(a)(1) |
| Terrorism Enhancement | +12 | U.S.S.G. § 3A1.4 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13. The parties agree that upon the application of the U.S.S.G. § 3A1.4 (Terrorism Enhancement) the defendant's applicable criminal history category is automatically increased to criminal history category VI. In the event the Court does not apply the U.S.S.G. § 3A1.4 enhancement, the defendant understands that there is no agreement as to Defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for any sentence they deem appropriate, including a sentence outside the sentencing range established by the Sentencing Guidelines, based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

WAIVER OF CONSTITUTIONAL RIGHTS

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be

represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

16. Defendant understands that, with the exception of an appeal based on a claim that defendant’s guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant’s conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant’s plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

17. Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction within or below the range corresponding to an offense level of 37 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above in paragraph 6 and (b) the Court imposes a term of imprisonment of no less than that corresponding to an offense level of 37 and the criminal history category VI, the USAO gives up its right to appeal any portion of the sentence.

19. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered

evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statute, or statute of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED WAIVER OF DISCOVERY

20. Defendant acknowledges that he has received substantial discovery from the government and that he has had sufficient time to review and discuss that discovery with his attorney. Defendant understands that the government obtained additional material in this investigation that defendant has not been shown. In exchange for the government's obligations under this agreement, defendant gives up any right he may have had to review the additional material, regardless of whether it is arguably exculpatory or inculpatory, and further agrees to waive any argument that the withholding of this material caused defendant's plea to be not knowing or involuntary. The government agrees not to use at sentencing any of the withheld materials without providing it to defendant.

WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

21. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

RESULT OF WITHDRAWAL OF GUILTY PLEA

22. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

24. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

25. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

26. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

28. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed

as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

30. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

31. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

BILAL A. ESSAYLI
First Assistant United States
Attorney

Ian V. Yanniello — 9/16/26

IAN V. YANNIELLO
AMANDA B. ELBOGEN
DANIEL H. WEINER
Assistant United States Attorneys

[signature] — 7/21/26

DANTE JAMES ANTHONY-GAFFIELD
Defendant — Date

[signature] — 07/21/26

ROBERT K. SCHWARZ
Attorney for Defendant
DANTE JAMES ANTHONY-GAFFIELD — Date

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

DANTE JAMES ANTHONY-GAFFIELD
Defendant

7/21/26
Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am DANTE JAMES ANTHONY-GAFFIELD's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

[signature]
ROBERT K. SCHWARZ
Attorney for Defendant
DANTE JAMES ANTHONY-GAFFIELD

7/21/26
Date